**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ANGEL TUDOR,**

**Plaintiff,** **1:18-cv-826 (GLS/CFH)**

**v.**

**WHITEHALL CENTRAL SCHOOL DISTRICT,**

**Defendant.**

---

**APPEARANCES:** **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Angel Tudor
Pro Se
74 Circular Street
Lake Luzerne, NY 12846

**FOR THE DEFENDANT:**
Girvin, Ferlazzo Law Firm — SCOTT P. QUESNEL, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211-2350

**Gary L. Sharpe**
**Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Angel Tudor commenced this action, alleging claims pursuant to the Americans With Disabilities Act (ADA) and perhaps under

state law.[1] (Compl. ¶¶ 12-34, Dkt. No. 1.) Pending is defendant Whitehall Central School District's pre-answer partial motion to dismiss. (Dkt. No. 4.) For the reasons that follow, the District's motion is granted in part and denied in part.

## II. Background[2]

Tudor was diagnosed with post-traumatic stress disorder (PTSD), anxiety, and depression in 2000. (Compl. at 2, 4.) In 2004, she began to work as a substitute teacher at Whitehall middle and high schools. (*Id.* at 4-5.) Eventually, she was hired as a long-term substitute. (*Id.* at 5.) That "position soon turned into a full time tenured position." (*Id.*) Tudor

---

[1] It is not entirely clear what claims Tudor has alleged. On the form ADA complaint she used to commence this action, she "complained of" the following conduct: failure to accommodate, retaliation, defamation of professional character, hostile work environment, and violation of federal labor laws. (Compl. at 3.) For the purpose of the instant motion, it is not necessary to resolve the question of precisely what claims are alleged in the complaint. Indeed, the District's motion seeks dismissal of any claim: (1) relating to Tudor's first Equal Employment Opportunity Commission (EEOC) charge; (2) relying upon conduct more than 180 days before Tudor filed her second EEOC charge; and (3) premised upon conduct occurring after she filed her second EEOC charge or not otherwise specified in that charge. (Dkt. No. 4, Attach. 6 at 1.)

[2] Consistent with the governing standard of review, the facts are drawn from the complaint and presented in the light most favorable to Tudor.

managed her "PTSD symptoms" "until the beginning of the 2008 school year." (*Id.*) At an unspecified time, Tudor was negatively affected by "a series of incidents," which gave rise to her requesting certain accommodations. (*Id.*) Those accommodations were apparently met by then-Superintendent James Watson until his retirement in January 2014. (*Id.* at 4, 5-6.)

Succeeding superintendent Elizabth Legault "created and or allowed such an intimidating, humiliating and hostile work environment to exist that it caused . . . Tudor to have a complete relapse of her PTSD condition," ultimately requiring her to take medical leave from December 2014 to June 2015. (*Id.* at 6.) The complaint describes several incidents that occurred during the time period before which Tudor took medical leave. (*Id.* at 6-8.)

After returning to work in September 2015, new interim superintendent William Scott refused to make workplace accommodations for Tudor and "implied that [she] did not have a disability and had falsified her medical documentation." (*Id.* at 8-9.) Tudor filed an Equal Employment Opportunity Commission (EEOC) charge in November 2015,[3]

---

[3] Tudor alleges that she filed her first charge in October 2015, (Compl. at 9); however, it is apparent from the charge itself, which may be considered as integral to the complaint, *see Sira v. Morton*, 380 F.3d 57,

alleging discrimination based on disability, which angered Scott. (*Id.* at 9; Dkt. No. 4, Attach. 3 at 3.) Her EEOC complaint was filed "so late that [the] EEOC was not able to investigate the charges properly" and Tudor was eventually issued a right to sue letter. (Compl. at 9-10.) Tudor's PTSD and financial situation prevented her from "follow[ing] through with the litigation process at that time." (*Id.* at 10.)

A series of other incidents, related to Tudor's alleged need to take breaks and leave the school building in connection with her disability, ensued during the fall of the 2016-2017 school year. (*Id.* at 10-15.) Tudor suffered "a complete relapse of her PTSD conditions," and ultimately filed a second charge with the EEOC on November 2, 2016. (*Id.*; Dkt. No. 4, Attach. 5 at 3.) The complaint describes other interactions between Tudor and school administrators that post-date her second EEOC charge and narrate what transpired between the parties through the 2017-2018 school year. (Compl. at 15-25.)

On July 13, 2018, Tudor commenced this action, alleging various claims. (Compl. ¶¶ 12-34); *see supra* note 1. Thereafter, the District

---

67 (2d Cir. 2004), that it was filed in November 2015, (Dkt. No. 4, Attach. 3 at 3).

moved for partial dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 4.)

## III. <u>Standard of Review</u>

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV. <u>Discussion</u>

The District's motion seeks dismissal in three respects. First, the District asserts that, because Tudor failed to timely bring this action after receiving a right to sue letter following her first EEOC charge, any claims arising out of the conduct complained of in that EEOC charge must be dismissed. (Dkt. No. 4, Attach. 6 at 3-4.) Second, the District contends that dismissal of Tudor's claim(s) related to her second EEOC charge are limited to conduct that occurred no more than 180 days prior to filing that charge. (*Id.* at 5.) Third, and lastly, the District argues that any claim(s) dependent upon conduct that post-dates Tudor's second EEOC charge, or that was not specifically mentioned therein, must be dismissed as unexhausted. (*Id.* at 6-9.) In her response, Tudor appears to admit that

any claims stemming from her first EEOC charge are untimely, but argues that the thrust of her claims were brought within the ninety-days following the issuance of a right to sue letter following her second EEOC charge. (Dkt. No. 11.) The court will deal with each of the District's arguments in support of dismissal in turn.

**A. <u>Timeliness of EEOC Charges</u>**

"To file a timely claim under the ADA, a plaintiff must file a complaint 'in federal district court within [nintey] days of the [plaintiff's] receipt of a right-to-sue letter from the' . . . EEOC." *Perez v. Mason Tenders Dist. Council Tr. Funds*, 742 F. App'x 584, 585 (2d Cir. 2018) (quoting *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011)). Equitable tolling may extend the time within which the plaintiff must bring her federal action provided that she "(1) has 'acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that' extraordinary circumstances kept her from filing on time." *Id.* (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003)).

Here, as argued by the District, (Dkt. No. 4, Attach. 6 at 3-4), Tudor admits, in both the complaint and in her response, that she failed to pursue

litigation after receiving the first right to sue letter, (Compl. at 9-10; Dkt. No. 11 at 1). Indeed, in her response, Tudor concedes that she has "filed this lawsuit based on [her] second disability discrimination claims filed with the EEOC . . .on September 20, 2017.[4]" (Dkt. No. 11 at 1.) Even if Tudor had not conceded that any conduct related to her first EEOC charge was untimely, it would still be true that she did not file within ninety days and that equitable tolling would not save her. Tudor's conclusory allegation that her PTSD and financial inability to hire an attorney prevented her from filing within ninety days of the issuance of her first right to sue letter, (Compl. at 10), would not constitute the "'rare and exceptional circumstance[s]'" necessary to invoke the equitable tolling doctrine. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (quoting *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999)). For all of these reasons, the District's motion is granted as to any claims arising out of conduct covered by Tudor's first EEOC charge.

---

[4] Tudor does not allege, and the court is without any documentation to show, that any EEOC charge was filed in September 2017. It appears that Tudor included that date in error. The court construes Tudor's response to indicate that she is now pursing the claim(s) alleged in connection with her second EEOC charge, which was filed on November 2, 2016 and for which a right to sue letter was issued on April 17, 2018. (Dkt. No. 4, Attach. 5 at 3; Dkt. No. 12, Attach. 3.)

## B. <u>180-Day Rule/300-Day Rule</u>

"As a predicate to filing suit under the[ ADA], a private plaintiff must first file a timely charge with the EEOC." *Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011). Section 2000e-5(e)(1) of title 42 of the United States Code, which applies to the ADA by virtue of 42 U.S.C. § 12117(a), requires that a charge of unlawful employment practices be made within 180 days of its occurrence[5] to the EEOC unless "the person aggrieved has initially instituted proceedings with a State or local agency," in which case a charge must be filed within 300 days of the occurrence. In New York, however, the 300-day limit applies automatically given the relationship between the EEOC and New York State Division of Human Rights. *See Shums v. N.Y.C. Dep't of Educ.*, No. 04-CV-4589, 2006 WL 8437471, at *5 n.2 (E.D.N.Y. Apr. 3, 2006); *see also Burns v. Cty. of Schenectady*, No.

---

[5] The date of the occurrence of a discriminatory act depends on whether it can be fairly described as a discrete unlawful act or part of a continuing violation. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.101, 113-14 (2002). Accordingly, where the complained of conduct is part of a pattern of conduct that collectively creates an actionable claim, such as a hostile work environment claim, the claim is timely "if the plaintiff 'allege[s] . . . some non-time-barred acts' contributing to the alleged violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

07-CV-0776, 2009 WL 2568546, at *3 (N.D.N.Y. Aug. 18, 2009); *accord Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325-26 (2d Cir. 1999); *but see Palummo v. St. Vincent's Med. Ctr.*, 4 F. App'x 99, 101 n.1 (2d Cir. 2001) (indicating that the 300-day limit applies only if the plaintiff "has filed a charge [directly] with a state agency"). As with the ninety-day right to sue letter rule discussed above, the applicable time period, either 180 or 300 days, is subject to equitable tolling, which functions in exactly the same way as described above. *See supra* Part IV.A.

Here, the District argues only that Tudor failed to file a charge with the EEOC within 180 days. (Dkt. No. 4, Attach. 6 at 5.) This argument mistakenly presumes that the 180-day rule applies and, therefore, dismissal on this basis is not warranted.

**C. <u>Exhaustion</u>**

Although not always referred to as an exhaustion requirement, an EEOC charge (or a charge filed with the appropriate state agency) "is a prerequisite to bringing an ADA . . .claim in federal court." *Momot v. Dziarcak*, 208 F. Supp. 3d 450, 458 (N.D.N.Y. 2016) (citing *Harri*s, 186 F.3d at 247). "In this circuit, . . . claims that were not asserted before the EEOC may be pursued in a subsequent federal court action [only] if they

are reasonably related to those that were filed with the agency." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (internal quotation marks and citation omitted).

> Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

*Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)).

Here, to the extent that Tudor alleges any claims that she did not raise in a timely charge of discrimination submitted to the EEOC, they are subject to dismissal. A careful review of Tudor's second EEOC charge reveals that she complained only of a failure to accommodate her disability. (Dkt. No. 4, Attach. 5 at 3.) As mentioned above, *see supra* note 1, it is unclear exactly what claims are alleged in the complaint. For that reason, the court is reluctant, without further elucidation by the parties, to dismiss a potential claim for retaliation, or to place a hard date on Tudor's ability to recover under a failure to accommodate theory to the extent that the conduct post-dating the second EEOC charge can be considered to be

carried out in the same manner as the conduct described in the charge. However, there is no doubt that the second charge did not allege a hostile work environment claim, and, as such, that claim must be dismissed.[6]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the District's motion to dismiss (Dkt. No. 4) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to all claims arising out of Tudor's first EEOC charge, which claims are **DISMISSED** as untimely; and

**GRANTED** as to a potential hostile work environment claim in connection with Tudor's second EEOC charge, which is **DISMISSED**; and

**DENIED** in al other respects; and it is further

**ORDERED** that the parties notify Magistrate Judge Christian F. Hummel in order to schedule further proceedings in accordance with this

---

[6] The court notes that the complaint at least nominally complains of a violation of "Federal Labor Laws" and defamation, claims for which the District has made no mention in its motion papers. Although the complaint is not a model of clarity, in the absence of an express argument for dismissal, those potential claims remain. Finally, the court does not read Tudor's response to seek leave to amend her pleading, (Dkt. No. 11 at 1), and, in any event, to the extent that dismissal is required as described above, amendment would be futile.

order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 27, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge