**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANGEL TUDOR,**

                      **Plaintiff,**

           **v.**

**WHITEHALL CENTRAL**
**SCHOOL DISTRICT,**

                 **Defendant.**

**1:18-cv-826**
**(GLS/CFH)**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Law Office of Patrick Sorsby<br>1568 Central Avenue, 1st Floor<br>Albany, NY 12205 | PATRICK SORSBY, ESQ. |
| **FOR THE DEFENDANT:**<br>Girvin & Ferlazzo, P.C.<br>20 Corporate Woods Boulevard<br>Albany, NY 12211-2350 | SCOTT P. QUESNEL, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Angel Tudor commenced this action against Whitehall

Central School District, alleging claims pursuant to the Americans With

Disabilities Act (ADA),[1] Family and Medical Leave Act (FMLA),[2] and state law.  (Compl., Dkt. No. 1.)  Pending is the District's motion for summary judgment.  (Dkt. No. 53.)  For the reasons that follow, the motion is granted in part and denied in part, as described below.

## II.  Background

### A.  Facts[3]

The District is a public school district located in Washington County, New York.  (Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 53, Attach. 1.)  Tudor is an employee of the District, who served initially as a substitute teacher and now as a full-time teacher.  (*Id.* ¶ 2.)  On September 29, 2015, Tudor provided the District with a letter from her medical provider, Richard Moffitt, which stated that Tudor suffered from post-traumatic stress disorder (PTSD) and required disability accommodations.

---

[1]  *See* 42 U.S.C. §§ 12101-213.

[2]  *See* 29 U.S.C. §§ 2601-54.

[3]  Unless otherwise noted, the facts are not in dispute.  To the extent Tudor disputes any of the facts asserted by the District, but fails to cite to a fact in the record that shows an actual dispute, the fact will be deemed admitted pursuant to Local Rule 56.1(b).  Further, to the extent Tudor asserts additional facts or make arguments in her responsive paragraphs that do not directly dispute the facts alleged in the District's statement, these "facts" and arguments will not be considered in connection with this summary judgment motion "because they have not been submitted through the procedure outlined by N.D.N.Y. L.R. [56]."  *See Lomonoco v. Saint Anne Inst.*, No. 1:15-CV-1163, 2018 WL 2324051, at *1 (N.D.N.Y. May 22, 2018).

(*Id.* ¶¶ 13-14.[4])  Tudor and the District then engaged in a period of correspondence regarding Tudor's PTSD, which ultimately did not result in any accommodations being provided by the District for the 2015-2016 school year.  (*Id.* ¶ 15-23; Dkt. No. 53, Attach. 12.)  On September 15, 2016, Tudor and the District resumed correspondence regarding her PTSD and need for accommodation, which continued for months.  (Def.'s SMF ¶¶ 32, 34-36, 38-46, 56-61, 99, 116)  Tudor requested the ability to leave campus twice a day for fifteen minutes, and the District ultimately allowed her to leave campus during her lunch period.  (Dkt. No. 53, Attach. 46.)

Tudor filed a charge with the EEOC on November 2, 2016, alleging that the District "resisted" and "fail[ed]" to provide her with her disability accommodations, and, on October 6, 2016, Tudor requested FMLA leave due to her PTSD until "the end of December," which the District granted. (Def.'s SMF ¶¶ 47-50, 89; Dkt. No. 53, Attach. 14.)  On December 9, 2016, Tudor informed the District that she had been cleared by her doctor to return to work on December 19, 2016, however the District required her to remain on leave until January 3, 2017, the first day of school after holiday

---

[4]  Although Tudor disputes a portion of the facts in this paragraph of the District's statement of material facts, the facts cited here are not disputed.

recess.  (Def.'s SMF ¶¶ 52-55.)  Tudor returned to work on January 3, 2017.  (*Id.* ¶ 61.)

Shortly thereafter, the District met with Tudor to discuss the potential for Tudor to leave the campus twice a day to accommodate her PTSD.  (*Id.* ¶¶ 62-66.)  On January 23, 2017, the District sent Tudor a letter that informed her that it could not provide her with the exact accommodation she was requesting (two fifteen-minute breaks to leave campus, one in the morning and one in the afternoon), but that she could leave campus during her "prep" period and she could continue to take a break during her lunch period.  (*Id.* ¶ 68; Dkt. No. 53, Attach. 47.)  Tudor remained at work for the rest of the 2016-2017 school year with this arrangement in place.  (Def.'s SMF ¶ 70.)

During the following summer recess, Tudor was placed on a "Teacher Improvement Plan" (TIP), and, later that summer, she was informed that her teaching schedule for the coming year would be structured in such a way that she would not be able to take a break and leave campus in the morning.  (*Id.* ¶¶ 72, 75-77.)  To resolve this issue for the 2017-2018 school year, the District arranged for a school librarian to relieve Tudor for fifteen minutes in the morning which permitted Tudor to

take a break and leave campus.  (*Id.* ¶¶ 78-80.)  However, Tudor asserts

that she was often unable to take this break because the librarian was

unavailable.  (Pl.'s Statement of Material Facts (SMF) ¶¶ 78-80, Dkt.

No. 55; Dkt. No. 56, Attach. 1 at 206.)  When Tudor raised concerns about

the inadequacy of this arrangement, she alleges that her principal stated

"[w]ell, that's your problem."  (Pl.'s SMF ¶¶ 71, 78; Dkt. No. 56, Attach. 1 at

206.)  On May 1, 2018, Tudor's principal issued two "letters of counsel" to

Tudor.  (Def.'s SMF ¶ 88.)

**B.   Procedural History**

    After Tudor filed her complaint, (Compl., Dkt. No. 1), the District

moved to dismiss, (Dkt. No. 4).  The following claims survived: (1) ADA

failure to accommodate; (2) ADA retaliation; (3) Her "federal labor law"

claim (FMLA); and (4) defamation.  (Dkt. No. 13 at 1 n.1, 11.)  Tudor's

defamation claim has since been withdrawn.  (Dkt. No. 63, Attach. 1.)  The

District now seeks summary judgment on the remaining claims.  (Dkt.

No. 53.)

## III.  Standard of Review

    The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here.  For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

## A.    Failure to Accommodate

With respect to Tudor's failure to accommodate claim, the District

argues she has failed to establish that she is a person with a disability

within the meaning of the ADA, and, alternatively, that the District provided

her with her requested accommodations and there was no unreasonable

delay in doing so.[5]  (Dkt. No. 53, Attach. 2 at 10-16.)  Tudor argues that the

District refused to reasonably accommodate her because the faculty

member who was supposed to relieve Tudor in order for her to take her

morning fifteen-minute break "was not always there," and that the District's

delay of four months in granting her requested accommodation

constructively denied her of the accommodation for this period.  (Dkt.

No. 62[6] at 18-20.)  Because a reasonable jury could conclude based on

_____

[5]  The District also argues that "[Tudor] cannot show that, with reasonable accommodation, she could perform the essential functions of the job at issue," (Dkt. No. 53, Attach. 2 at 10), but does not develop this argument further.

[6]  Tudor is directed to Rule 7.1(b)(1) of the Local Rules of Practice, requiring "[n]o party . . . file or serve a memorandum of law that exceeds twenty-five (25) pages in length."

Tudor's evidence that she was effectively denied her accommodation, summary judgment is not warranted on this issue.

An employer may be liable under the ADA where it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A); *see McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).  To make a prima facie showing of an employer's failure to accommodate, a plaintiff must establish that "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).  Constructive failure to accommodate can be demonstrated when an employer delays in granting an accommodation, and the delay is motivated by the employer's discriminatory intent, as opposed to mere negligence.  *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 257 (S.D.N.Y. 2014).

7

As relevant here,[7] disability under the meaning of the ADA requires
"a physical or mental impairment that substantially limits one or more major
life activities of such individual."  *See* 42 U.S.C. § 12102(1)(A); *see also*
*Antidormi v. Nat'l R.R. Passenger Corp.*, No. 1:18-cv-1344, 2019 WL
4170155, at *4 (N.D.N.Y. Sept. 3, 2019).  "Major life activities" include, but
are not limited to, "caring for oneself, performing manual tasks, seeing,
hearing, eating, sleeping, walking, standing, lifting, bending, speaking,
breathing, learning, reading, concentrating, thinking, communicating, and
working."  42 U.S.C. § 12102(2)(A).  "An impairment need not prevent, or
significantly or severely restrict, the individual from performing a major life
activity in order to be considered substantially limiting."  *Veldran v. Dejoy*,
839 F. App'x 577, 579 (2d Cir. 2020).  "The definition of disability . . . shall
be construed in favor of broad coverage of individuals . . . , to the
maximum extent permitted."  42 U.S.C. § 12102(4)(A).

While the District does not dispute that PTSD is "recognized . . . to
be [a] mental impairment[] that can substantially limit one or more major life
activities," they argue that Tudor has not sufficiently demonstrated that she

---

[7] Tudor has indicated that she is alleging disability under 42 U.S.C. § 12102(1)(A)
rather than § 12102(1)(B) or (C).  (Dkt. No. 62 at 13-16.)

is disabled under the ADA because she has only offered her "own affidavit, and several unauthenticated medical records" as proof of her disability.[8] (Dkt. No. 66 at 2.)

Although Tudor's medical records are in fact unauthenticated, the court will consider them in connection with the pending motion. *See Alcantara v. Digangi*, No. 15-cv-5584, 2022 WL 1444284, at *2 n.3 (E.D.N.Y. May 6, 2022) ("Although plaintiff has not authenticated the[] medical records, the [c]ourt may consider them on this motion, as . . . it is well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." (internal quotation marks and citation omitted)); *see also Parks v. Blanchette*, 144 F. Supp. 3d 282, 294 (D. Conn. 2015) (considering unauthenticated medical records at summary judgment phase of an ADA case); *but see Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 391 (S.D.N.Y. 1998) (holding unsworn letters from plaintiff's doctor to

---

[8] The District also argues that these medical documents should be excluded because Tudor "fail[ed] to properly designate a medical professional as an expert pursuant to Fed. R. Civ. P. 26(a)(2)," (Dkt. No. 66 at 4), however, this argument is unpersuasive. *See Graci v. Indep. Health Ass'n, Inc.*, No. 05-CV-231A, 2007 WL 2403723, at *5 (W.D.N.Y. Aug. 20, 2007) ("[T]he majority of courts now follow the rule that an expert report is not required from treating physicians except when that physician will testify to matters learned outside the scope of treatment.").

be inadmissible hearsay and "not . . . consider[ing them] in opposition to a summary judgment motion").

The medical records provided by Tudor note, among other things, that her PTSD causes "difficulty sleeping," "difficultly articulating" (Dkt. No. 54, Attach. 1), "memory impairment," (Dkt. 54, Attach. 2), "loss of concentration," "difficulty with . . . [certain] relationships," and "difficulty focusing." (Dkt. No. 54, Attach. 3; Dkt. 54, Attach. 2.)  Tudor's affidavit states that, among other things, her PTSD, "substantially limits [her] ability to communicate" because it causes her to stutter in a way that essentially prevents her from speaking, makes her unable to "focus [her] thoughts," and prevents her from sleeping.[9]  (Dkt. No. 54 ¶ 15.)  Accordingly, Tudor has demonstrated that whether she is disabled is a material fact in dispute, such that a trial is necessary on this issue.  *See Limauro v. Consolidated*

---

[9]  The District argues that "[t]he Court should sanction [Tudor] under Fed. R. Civ. P. 26 or 37 by disregarding any statements contained in her affidavit that describe how her medical conditions have allegedly impacted her life activities" because Tudor failed to supplement her interrogatory response to include this information.  (Dkt. No. 66 at 2-3.)  Given Tudor's former pro se status and there being no indication of bad faith by her, sanctions are inappropriate. *See Bice v. Robb*, 511 F. App'x 108, 110 (2d Cir. 2013) ("A district court has wide discretion in punishing failure to conform to the rules of discovery." (internal quotation marks and citation omitted)); *see also Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 88 (W.D.N.Y. 2005) ("Severe sanctions, such as preclusion of evidence . . . , can generally only be imposed upon a showing of willfulness or bad faith." (citation omitted)); *Burks v. Eagan Real Estate Inc.*, 742 F. Supp. 49, 52 n.3 (N.D.N.Y. 1990) ("Particular care should be taken by the court in imposing sanctions when one of the parties in the action is appearing *pro se*." (citation omitted)).

*Edison Co. of N.Y.*, No. 20-cv-03558, 2021 WL 466952, at *8 (S.D.N.Y. Feb. 9, 2021) ("[Plaintiff]'s PTSD and major depressive disorder substantially limits his ability to sleep, regulate his emotions, be happy, and to socialize." (internal quotation marks and citation omitted)); *see also* 42 U.S.C. § 12102(2)(A) ("Major life activities" can include "sleeping, . . . speaking, . . . learning, . . . concentrating, thinking, [and] communicating.").

The District further argues that "the accommodation that [Tudor] requested was ultimately provided to her," (Dkt. No. 53, Attach. 2 at 10-11), and they have met their burden by demonstrating that Tudor was, in fact, granted her requested accommodation: two fifteen-minute breaks during the work day. (Def.'s SMF ¶¶ 78-80.) However, Tudor has presented a disputed issue of fact with regard to whether she was actually able to take these breaks after they were granted to her for the 2017-2018[10] school year, (Pl.'s SMF ¶¶ 78-80), such that summary judgment is not appropriate

---

[10] The District contends that the court may only consider "the events that occurred no more than 300 days before" Tudor's November 2, 2016 EEOC charge, (Dkt. No. 53, Attach. 2 at 10-11), however, the court is not limited to this time frame, but may also consider any subsequent reasonably related conduct. (Dkt. No. 13 at 9-10.) Because Tudor's EEOC charge alleges that the District "ha[s] resisted providing [her disability] accommodations" the District's continued resistance postdating her EEOC filing is subsequently related. *See Haner v. County of Niagara*, No. 19-CV-754, 2021 WL 230874, at *3 (W.D.N.Y. Jan. 2021)("Courts have found that new misconduct meets th[e 'subsequently related conduct'] standard where it evinces the same overall discriminatory purpose or end as the previous misconduct contained in the EEOC charge.").

on this issue.[11]

Regarding Tudor's claim of constructive denial, as relevant here, the District argues that there is no evidence in the record that demonstrates discriminatory intent by the District.  (Dkt. 53, Attach. 2 at 17; *see* Dkt. No. 66 at 6-8.)  Additionally, the District provides a multitude of evidence that indicates it engaged in a good-faith effort to reach a resolution with Tudor regarding her accommodation, with any delay in the process being attributable to Tudor.  (Def.'s SMF ¶¶ 14-22, 34-35, 39, 44-46, 56, 58, 60, 68.)  Tudor appears to concede that there is "insufficient evidence in the record" indicating that the District's delay was unreasonable, and then directly contradicts this, stating that "[a] reasonable jury could conclude that the [District's] delay in granting [Tudor's] accommodation request was caused by the [District's] unreasonableness, unwillingness to grant the requested accommodation, or bad faith," but points to no record support. (Dkt. No. 62 at 19-20.)  Given that the District has met its burden by showing that there are no facts in the record that indicate anything other

---

[11]   The District asserts that Tudor's position in discovery has foreclosed her from making any argument about actual denial of her accommodation, and is limited to the theory of constructive denial.  (Dkt. No. 66 at 5.)  The court will not sanction Tudor for her discovery-related conduct for the reasons already mentioned.  *See supra* note 9.

than a good-faith effort by the District to engage in the ADA process with Tudor, and that any significant delay can be attributed to Tudor, they are entitled to summary judgment.  *See Hamedl v. Weiland*, No. 10-CV-2738, 2012 WL 3903499, at *7 (E.D.N.Y. Sept. 6, 2012) ("To demonstrate that the delay in accommodation violated the ADA, plaintiff must prove that the delay was motivated by discriminatory intent." (internal quotation marks and citation omitted)), *aff'd sub nom. Hamedl v. Verizon Commc'ns, Inc.*, 557 F. App'x 68 (2d Cir. 2014).  Accordingly, summary judgment is granted insofar as Tudor's claim for failure to accommodate was based on a theory of constructive denial.

**B.    Retaliation**

The District argues that summary judgment is appropriate as to Tudor's retaliation claim because Tudor has not exhausted her administrative remedies.  (Dkt. No. 53, Attach. 2 at 19.)  The District further contends, in the alternative, that Tudor has not established her prima facie case, because she did not suffer any adverse employment action and there is no causal connection between any allegedly retaliatory act by the District and Tudor's protected activity.  (*Id.* at 19-22.)  Tudor argues that being placed on a "teacher improvement plan," having letters of counsel

13

"plac[ed] . . . in her file on January 3[,] 2017 and May 1[,] 2018, and having her schedule changed "in a way that exasperated her disability" all constituted adverse employment actions.  (Dkt. No. 62 at 23.)  She further asserts that "the close temporal proximately [of her] protected activity and the[] adverse employment actions" she faced establishes causation.  (*Id.* at 26.)  Further, Tudor contends that she has presented "other evidence [beyond temporal proximity] from which a jury may infer retaliatory animus," thus, establishing causation.  (*Id.* at 30.)  Tudor does not respond to the Districts' exhaustion argument.  (*See generally* Dkt. No. 62.)  Because Tudor cannot show a causal connection between her protected activity and the adverse employment actions she suffered, summary judgment is granted on this claim.

To establish a prima facie case of retaliation, a plaintiff must show that: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against h[er]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (internal citation omitted).  To establish a causal connection between the alleged adverse

14

action and the protected activity, a plaintiff "must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent." *Id.* at 720. This can be demonstrated either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (citation omitted).

An EEOC charge (or a charge filed with the appropriate state agency) "is a prerequisite to bringing an ADA . . . claim in federal court." *Momot v. Dziarcak*, 208 F. Supp. 3d 450, 458 (N.D.N.Y. 2016) (citation omitted). "In this circuit, . . . claims that were not asserted before the EEOC may be pursued in a subsequent federal court action [only] if they are reasonably related to those that were filed with the agency." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (internal quotation marks and citation omitted). Subsequent conduct is reasonably related to conduct in an EEOC charge if:

15

> [1] the claim would fall within the reasonably expected
> scope of an EEOC investigation of the charges of
> discrimination; [2] it alleges retaliation for filing the
> EEOC charge; or [3] the plaintiff alleges further
> incidents of discrimination carried out in precisely the
> same manner alleged in the EEOC charge.

*Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)).

In Tudor's EEOC charge she alleges that the District "resisted" and "fail[ed]" to provide her with her disability accommodations. (Dkt. No. 53, Attach. 14.) Nowhere does she allege that the district retaliated against her for requesting accommodations. (*Id.*) Accordingly, the alleged retaliation by Tudor is only subsequent related conduct insofar as she alleges she was retaliated against for filing the EEOC charge. *See Soules*, 882 F.3d at 57 (holding that subsequent conduct is reasonably related to conduct in an EEOC charge if "it alleges retaliation for filing th[at] EEOC charge").

However, the District's is correct, and Tudor has failed to establish a prima facie case of retaliation because there is no causal connection between Tudor's protected activity and any adverse employment action suffered by her. (Dkt. No. 53, Attach. 2 at 21.) Tudor filed her EEOC

charge on November 2, 2016,[12] (Def.'s SMF ¶ 89); was placed on TIP on August 15, 2017, approximately seven months after she filed with the EEOC, (*Id.* ¶ 75.); received her two May 1, 2018, "letters of counsel" approximately sixteen months after she filed with the EEOC, (Dkt. No. 54 ¶ 19); and had her teaching schedule changed in a way "that exasperated her disability," (Dkt. No. 62 at 23), "in mid-to-late August 2017,"[13] (Def.'s SMF ¶ 76), approximately nine months after she filed with the EEOC.[14] While Tudor argues that the temporal proximity of these events establishes a causal connection here, (Dkt. No. 62 at 25-26), the timing of her EEOC charge and these events are too attenuated for temporal proximity alone to establish causation.  *See Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 215

---

[12]   The District "does not dispute that it was aware of" the EEOC charge.  (Dkt. No. 53, Attach. 2 at 19.)

[13]   Tudor appears to contend in her memorandum of law that this schedule change occurred in January 2017, (Dkt. No. 62 at 26), however, Tudor established this in her counter-statement of material facts, and she admitted paragraph seventy-six of the District's statement of material facts, which notes the date as "mid-to-late August 2017." (Def.'s SMF ¶ 76; Pl.'s SMF ¶ 76.)

[14]   The District argues that Tudor should be foreclosed from basing her allegations of retaliation on any action by the District other than placing her on TIP, because of the position Tudor took during discovery, and that the court should specifically disregard any arguments pertaining to the January 3, 2017 letter of counsel because Tudor "did not supply the [c]ourt with a copy . . . and has not set forth any facts about it in a counter-statement of material facts."  (Dkt. No. 66 at 11.)  The former of these arguments is unpersuasive for the reasons already mentioned.  *See supra* note 9.  Regarding the latter argument, the District is correct, and the January 3, 2017 letter, and any arguments pertaining to it, will not be considered by the court for the purpose of this summary judgment motion.  *See* N.D.N.Y. L.R. 56.1(b).

(E.D.N.Y. 2013) ("Claims of [ADA] retaliation are . . . routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation." (collecting cases)).

Tudor's argument that "other evidence [exists] from which a jury may infer retaliatory animus" is equally unpersuasive.  (Dkt. No. 62 at 26-31.) Much of this argument relates to the January 3, 2017 letter of counsel, which the court need not consider, (Dkt. No. 62 at 27-30).  *See supra* note 14.  Additionally, Tudor contends that her "principal . . . testified that he would not have placed the May 1st letters of counsel against [Tudor] but that the Superintendent compelled him to [do so]."  (Dkt. No. 62 at 30.) However, the deposition testimony she cites to support this assertion does not provide any indication of retaliatory animus on behalf of the principal or superintendent.  (Dkt. No. 56, Attach. 10 at 108.)  Further, Tudor's only support for her assertion that her placement on TIP was "discretionary" and motivated by "animus" towards her, (Dkt. No. 62 at 30-31), is her own self-serving affidavit stating so, (Dkt. No. 56, Attach. 1 at 56).  Accordingly, the District is entitled to summary judgment on this claim.

**C.    FMLA**

Finally, with respect to Tudor's FMLA claim, the District argues that it fully complied with the FMLA in refusing to allow Tudor to return to work on December 19, 2016.  (Dkt. No. 53, Attach. 2 at 22-23.)  Tudor contends that a material issue of fact remains with respect to whether the District complied with the FMLA.  (Dkt. No. 62 at 32-34.)

Pursuant to 29 C.F.R. § 825.602(a)(1)(i)-(ii), a school district may require an employee who begins a leave of absence to remain on leave until the end of the academic term if (1) the leave of absence "will last at least three weeks," (2) the employee takes their leave of absence "more than five weeks before the end of a term," and (3) "would return to work during the three-week period before the end of the term."  "Academic term means the school semester, which typically ends near the end of the calendar year and the end of spring each school year."  *Id.* § 825.602(b).

The District has arguably met its burden by pointing to facts in the record indicating that a new academic term began on January 3, 2017 and that, because Tudor "began her period of FMLA leave on October 6, 2016, and sought to end that leave on December 19, 2016," the district was justified under the FMLA to require her to remain on leave for the

remainder of the term.  (Dkt. No. 53, Attach. 2 at 22-23; Def.'s SMF

¶¶ 108-10.)  Notably here, however, the relevant portion of the FMLA

contemplates the *end* of an academic term, and the District has provided

evidence that January 3, 2017 was the *beginning* of an academic term.

(Def.'s SMF ¶¶ 108-10; Dkt. No. 53, Attach. 3 ¶16.)  The District has also

established that teachers were not required to report to work between

December 19, 2016 and December 21, 2016.  (Dkt. No. 53, Attach. 3 ¶16.)

From these facts, it is likely that the prior academic term—the term at issue

here—ended somewhere between December 18, 2016 and January 2,

2017, but this is not readily apparent to the court based on the current

record.

Assuming that the District has met their initial summary judgment

burden based on the facts they allege, Tudor has demonstrated triable

issues of fact.  Tudor states in her affidavit that the academic term at issue

ended on January 27, 2017,[15] (Dkt. No. 54 ¶ 21), and provides an excerpt

---

[15]  The District contends that this statement in Tudor's affidavit "is inadmissible hearsay" and must be disregarded.  (Dkt. No. 66 at 15.)  They support this contention by claiming that this statement is "attribute[d] to unidentified . . . employees the New York State Department of Labor."  (*Id.*)  However, this is not completely accurate, and the statement in Tudor's affidavit at issue here—that the academic term ended on January 27, 2017—was made by Tudor, and not a New York State Department of Labor employee.  (Dkt. No. 54 ¶ 21.) Regardless, it appears that Tudor's affidavit merely relays her own prior statement that the ending of the academic term at issue was January 27, 2017, which, even if inadmissable

from the District's handbook showing that the end of the "marking period" was January 27, 2017.  (Dkt. No. 54, Attach. 9.)[16]  Given that the the precise end of the academic term remains in dispute, it cannot be said that the District complied with the FMLA by requiring Tudor to remain on her period of leave, and, thus, summary judgment is inappropriate on Tudor's FMLA claim.[17]

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that District's motion for summary judgement (Dkt.

_____

hearsay, may still be considered by the court at this juncture because Tudor could provide testimony at trial that January 27, 2017 was the end of the academic term.  *See Alcantara*, 2022 WL 1444284, at *2 n.3 ("[I]t is well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." (internal quotation marks and citation omitted)).

[16]  The District argues that this document should not be considered by the court because "[d]espite due demand, [Tudor] did not identify this document in response to a request served pursuant to Fed. R. Civ. P. 34 for documents which show that the District violated [FMLA] . . . and did not supplement her discovery responses to identify it," and, also, because Tudor "failed to assert facts based upon this document in a counter-statement of material[] facts as required by Local Rule 56.1(b), which precludes the [c]ourt from considering the document and any arguments premised upon it."  (Dkt. No. 66 at 15.)  These arguments are not persuasive.  *See supra* note 9; *see also* Fed. R. Civ. P 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[17]  The District argues, in the alternative, "that even if the [c]ourt concludes that there is genuine dispute over whether [Tudor] sought to return to work during the three-week period before the end of the term," Tudor's FMLA claim must still be dismissed "because the additional leave that [Tudor] was required to take . . . was not counted as FMLA leave, and [Tudor] was restored to the same position at the conclusion of her leave, in compliance with 29 C.F.R. § 825.603(b)," yet provides no record citation to support this position.  (Dkt. No. 66 at 15.)

No. 53) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Tudor's ADA retaliation claim and Tudor's ADA failure to accommodate claim insofar as it is premised on the theory of constructive denial; and

**DENIED** as to Tudor's ADA failure to accommodate claim insofar as it is premised on the theory of actual denial and Tudor's FMLA claim; and it is further

**ORDERED** that this case is deemed trial ready and a scheduling order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 12, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge

22